UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYRUS G. MURPHY,<br><br>               Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | No. CV-07-0214-JPH<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND REMANDING FOR FURTHER<br>ADMINISTRATIVE PROCEEDINGS |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing on April 30, 2008. (Ct. Rec. 22, 18). Plaintiff Cyrus G. Murphy ("Plaintiff") filed a reply brief on April 21, 2008. (Ct. Rec. 24). Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Joanne E. Dantonio represents the Commissioner of Social Security ("Commissioner"). The parties have filed a consent to proceed before a magistrate judge. (Ct. Rec. 6). After hearing argument and reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 18) and remands for further administrative proceedings. Defendant's Motion for Summary Judgment (Ct. Rec. 22) is **DENIED.**

## JURISDICTION

On April 28, 2004, Plaintiff filed applications for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB"), alleging disability since February 28,

2001, due to cervical spondylosis, scoliosis, stress, back problems, general muscle pain, depression and paralysis of muscles used for breathing. (Administrative Record ("AR") 15, 58-61, 65, 74). Plaintiff later amended his alleged onset date to January 31, 2004. (AR 15, 618-621). Plaintiff's applications for SSI and DIB were denied initially and on reconsideration.

On October 5, 2006, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff and vocational expert Tom Moreland. (AR 566-628). On March 13, 2007, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 15-29). The Appeals Council denied a request for review on May 30, 2007. (AR 7-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on July 5, 2007. (Ct. Rec. 1).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 43 years old on the date of the amended alleged onset of disability, had obtained a high school education and completed one year of college, and has past work experience as a porcelain/enamel painter, truck driver, core rip operator and material handler. (AR 28, 576-577, 616-618).

Plaintiff indicated that his impairments limited him to standing and sitting no more than 2 hours, lifting no more than 20

pounds, and no excessive turning of his head and torso.  (AR 74).
At the administrative hearing, Plaintiff testified that neck and
back pain interfered with his ability to work.  (AR 587-590).  He
also stated that he could lift only three pounds repetitively and
had problems grasping with his right hand.  (AR 589-591).  He
further mentioned difficulties with sleep and sleep apnea.  (AR
603-605).  Plaintiff testified that he is also anxious, gets
nervous in front of crowds, and gets agitated.  (AR 610-611).  He
noted that he stopped working due to a temporary lack of work.
(AR 75).  Plaintiff explained that he was laid off.  (AR 592).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as
the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than
twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The
Act also provides that a Plaintiff shall be determined to be under
a disability only if his impairments are of such severity that
Plaintiff is not only unable to do his previous work but cannot,
considering Plaintiff's age, education and work experiences,
engage in any other substantial gainful work which exists in the
national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
Thus, the definition of disability consists of both medical and
vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156
(9th Cir. 2001).

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.

20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.  If Plaintiff is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

*Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.   If
evidence supports more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity since the amended date of alleged
onset of disability, January 31, 2004.  (AR 17).  At step two, the
ALJ determined that Plaintiff has obesity, degenerative disc
disease of the lumbar spine and hypertension, severe impairments,
but that he does not have an impairment or combination of
impairments listed in or medically equal to one of the Listings

impairments.  (AR 17-23).  The ALJ specifically concluded that
since the amended date of disability onset, January 31, 2004,
Plaintiff has not had a severe mental impairment diagnosed by an
acceptable medical source.  (AR 22-23).

The ALJ found that Plaintiff has the residual functional
capacity ("RFC") to perform work at the light exertional level
with certain postural limitations.  (AR 23).  At step four of the
sequential evaluation process, the ALJ found that, based on
Plaintiff's RFC, he could not perform his past relevant work as a
porcelain/enamel painter, a truck driver, a core rip operator and
a material handler.  (AR 27-28).  However, the ALJ determined
that, based on Plaintiff's RFC, age, education, and work
experience, a finding that Plaintiff is "not disabled" is directed
by the Medical-Vocational Guidelines ("Grids") rules 202.21 and
202.22.  (AR 28).  Given Plaintiff's non-exertional limitations,
the ALJ relied on the testimony of the vocational expert who
testified that an individual with Plaintiff's RFC, age, education,
and work experience would be able to perform the requirements of
jobs such as cashier II, cleaner/housekeeper and laundry worker.
(AR 28-29).  Accordingly, based on the testimony of the vocational
expert, the ALJ determined at step five of the sequential
evaluation process that Plaintiff was not disabled within the
meaning of the Social Security Act.  (AR 28-29).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of
law.  Specifically, he argues that:

1.    The ALJ erred by finding that Plaintiff does not have
severe mental impairments; and

2.   The ALJ erred by failing to order a consultative examination for a complete, thorough psychological evaluation of Plaintiff.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

Plaintiff contends that the ALJ erred by concluding that he did not have severe mental impairments. (Ct. Rec. 19 at 8-13). Plaintiff asserts that, at a minimum, the ALJ erred by failing to order a consultative psychological examination to further develop the record with respect to Plaintiff's mental condition. (Ct. Rec. 19 at 11-13). The Commissioner responds that the ALJ properly considered and addressed the medical evidence of record and properly determined the severity of Plaintiff's impairments. (Ct. Rec. 23 at 6-15).

Plaintiff has the burden of proving that he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows that he has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe mental impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

In this case, the ALJ concluded that the records in evidence do not support the Plaintiff's allegations of severe mental impairments and that Plaintiff's subjective complaints were not sufficient to establish a severe mental impairment. (AR 20). The ALJ found that Plaintiff has not had a severe mental impairment since January 31, 2004. (AR 23).

On April 11, 2001, over three years before the alleged onset date, Plaintiff underwent a psychological evaluation with Robert E. Schneider, Ph.D. (AR 214-223). Dr. Schneider indicated that the results of the mental status evaluation revealed "no evidence of depression, anxiety nor any significant psychological impairment. [Plaintiff] did not appear to be in significant distress." (AR 217). However, the results of the MMPI-2

indicated he was suffering from clinically significant depression and anxiety with diminished psychological energy. (AR 220, 222). Dr. Schneider diagnosed a dysthymic disorder[1] and unresolved grief reaction and ruled out attentional disorder. (AR 223). He gave Plaintiff a global assessment of functioning ("GAF") score of 48.[2] (AR 223). Dr. Schneider indicated that Plaintiff had never been in psychological treatment and recommended he be referred to either individual psychological counseling or some type of grief group and for appropriate medications. (AR 223).

On May 24, 2002, Plaintiff was seen by Lisa Sjodin, M.D., on referral from Social Security Disability Determination Services. (AR 224-230). Dr. Sjodin noted that one year prior Plaintiff was referred to a psychiatric nurse practitioner and prescribed Prozac to manage his depressive symptoms. (AR 224). Plaintiff did not take the Prozac as prescribed. (AR 224). Dr. Sjodin diagnosed an adjustment disorder with depressed mood, mild to moderate, ethanol dependence, in complete, sustained remission and an attention deficit disorder. (AR 229). She gave Plaintiff a GAF score of 50. (AR 229). Dr. Sjodin remarked that, although Plaintiff had unresolved grief issues, his depression was mainly part of an adjustment reaction to his situation. (AR 229).

On February 26, 2003, Plaintiff was evaluated by licensed clinical psychologist Lawrence H. Moore, Ph.D. (AR 331-332). Dr.

---

[1]Dysthymia is defined as a low-grade or milder form of depression. THE MERCK MANUAL 1593, 1599 (15th ed. 1992).

[2]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

Moore indicated that, "[f]rom a psychiatric standpoint, this individual may have mild depressive symptoms related to situational stressors (i.e., unemployment, health concerns, relational problems) and may even suffer from mild, chronic mood difficulties, though there is little evidence to suggest the presence of a clinically significant disorder." (AR 331). Dr. Moore reported no functional impairment. (AR 331).

On September 2, 2004, Jay M. Toews, Ed.D. evaluated Plaintiff. (AR 273-276). Plaintiff reported to Dr. Toews that while he gets depressed, he felt his primary problems were physical rather than psychological and that his depression was "less than it was several years ago." (AR 273). Dr. Toews reported that Plaintiff was able to maintain attention and concentration, able to retain multi-step instructions over time, and able to execute routine job-related decisions and judgments. (AR 276). There was no indication Plaintiff would have difficulty relating to co-workers or tolerating supervision or that psychological problems would interfere with his employability. (AR 276). Dr. Toews diagnosed an adjustment disorder with anxiety and depressed mood, mild, ruled out learning disorders, NOS, and an attention deficit disorder, and gave Plaintiff a GAF score of 65.[3] (AR 276).

On September 16, 2004, state agency reviewing psychologist, Mary Gentile, Ph.D., reviewed the record and completed a Psychiatric Review Technique form. (AR 277-291). Dr. Gentile

---

[3]A GAF of 70-61 is characterized as:  "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

opined that Plaintiff's impairments were not severe.  (AR 277).
She indicated that Plaintiff's adjustment disorder with anxiety,
depressed mood, mild, and alcohol abuse in questionable remission
caused Plaintiff to have no restrictions of activities of daily
living, mild difficulties in maintaining social functioning, mild
difficulties in maintaining concentration, persistence or pace and
no repeated episodes of decompensation.  (AR 280, 285, 287).

On December 13, 2004, state agency reviewing psychologist,
Sharon Underwood, Ph.D., reviewed the record and indicated that
Plaintiff's mental impairments continued to appear non-severe.
(AR 312, 324).  Dr. Underwood's findings were identical to the
findings of Dr. Gentile.  (AR 312-326).

On January 25, 2006, Clark D. Ashworth, Ph.D., examined
Plaintiff.  (AR 364-371).  Dr. Ashworth noted that 2003 counseling
notes revealed diagnoses of depressive disorder, NOS, and a
personality disorder, NOS, as well as a GAF score of 55 without
explanatory narrative.  (AR 366).  The counseling notes further
indicated that Plaintiff was seen again in 2005 and given no
diagnoses and a GAF score of 70, corresponding to mild symptoms or
some difficulty in functioning but generally doing pretty well
with some meaningful relationships.  (AR 366).  Dr. Ashworth gave
rule out diagnoses of a depressive disorder and an anxiety
disorder, mild severity, and a personality disorder, NOS, and gave
a GAF score of 55.[4]  (AR 370).  Dr. Ashworth noted that
Plaintiff's "overall functioning appears improved over what I see

---

[4]A GAF of 60-51 reflects: Moderate symptoms or moderate
difficulty in social, occupational, or school functioning.  *See*
DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

described in records of past evaluations," and that there did not appear to be a great need for psychological treatment other than counseling. (AR 370-371).

While the ALJ determined that "since the amended date of disability onset, January 31, 2004, the claimant has not had a severe mental impairment diagnosed by an acceptable medical source" (AR 22), the undersigned finds that the medical record paints an incomplete picture of Plaintiff's overall mental health. Although Plaintiff ultimately bears the burden of establishing his disability, *see Bowen*, 482 U.S. at 146, the ALJ had an affirmative duty to supplement Plaintiff's medical record, to the extent it was incomplete, before rejecting his claim of a severe mental impairment. *See* 20 C.F.R. § 404.1512(e)(1); S.S.R. 96-5p (1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.")

The ALJ's duty to supplement Plaintiff's record is triggered by ambiguous evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). As outlined above, the mental health records prior to the disability onset date reveal that Plaintiff was suffering from depressive symptoms and anxiety which resulted in mild to serious symptoms or difficulty in functioning. (AR 220-223, 229, 331). After January 31, 2004, the medical records evidence continuing mental problems (AR 276, 280-287, 312-324, 370) that possibly are sufficient to pass the de minimis threshold of step two of the sequential evaluation process. *See, Smolen*, 80 F.3d at 1290.

An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence."  S.S.R. 85-28; *Webb*, 433 F.3d at 686-687.  Here, the medical evidence was sufficiently ambiguous with regard to Plaintiff's mental impairments to trigger the ALJ's duty to fully and fairly develop the record.  Based on the foregoing, the matter shall be remanded to further develop the record and to make a new determination at step two of the sequential evaluation process with respect to Plaintiff's mental impairments.

## CONCLUSION

The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen*, 80 F.3d at 1292.  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  It is not clear from the record whether Plaintiff's mental impairments after the disability onset date are "severe" as defined by the Social Security Act.  On remand the ALJ shall further develop the record by ordering a consultative mental health examination to clarify Plaintiff's mental health problems.  The ALJ shall thereafter conduct a new step two analysis, taking into consideration the consultative examination as well as all other credible evidence of record.

After making a new determination at step two, the ALJ will need to continue with the sequential evaluation process, including determining at step three if the severity of any of Plaintiff's impairments, either singly or in combination, meet or equal a

Listings impairment.  The ALJ shall thereafter reevaluate Plaintiff's residual functional capacity and ability to perform other work, at step five of the sequential evaluation process, obtaining additional vocational expert testimony if necessary.

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 18**) is **GRANTED.**

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 22**) is **DENIED.**

3.   The above captioned matter is **REMANDED** for additional proceedings as outlined above and pursuant to sentence four of 42 U.S.C. § 405(g).

4.   Judgment shall be entered for **PLAINTIFF**.

5.   An application for attorney fees may be filed by separate motion.

6.   The District Court Executive is directed to enter this Order, provide a copies to counsel, and **CLOSE** the file**.**

**IT IS SO ORDERED.**

**DATED** this ____30th____ day of April, 2008.

                              *S/James P. Hutton*
                              JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE